## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

FILED
CHARLOTTE, NC

APR 1 2 2017

US District Court
Western District of NC

| | |
|---|---|
| FELICIA ANN UNDERDUE<br>3944 Town Center Rd<br>Harrisburg, NC 28075<br>Telephone: 704-488-8189<br>Felicia.Underdue@yahoo.com<br>Plaintiff Pro Se<br><br>v.<br><br>Wells Fargo Bank, N.A.<br>C/O Timothy J. Sloan, Chief Executive Officer<br>1525 W WT Harris Blvd<br>Charlotte, NC 28262 | **COMPLAINT**<br>**CIVIL ACTION NO.**<br>3:17CV196<br><br>**JURY TRIAL DEMANDED** |

## NATURE OF COMPLAINT

1. This action is brought to remedy discrimination on the basis race as permitted by Section 1981 of the Civil Rights Act of 1866; 42 U.S.C. § 1981 (hereinafter referred to as "Section 1981").

2. Section 1981(a), which was originally enacted as the first section of the Civil Rights Act of 1866, 42 U.S.C. 1981, provides that (http://www.elinfonet.com/workipedia/Section-1981):

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens..."

3. Section 1981 permits victims of race-based employment discrimination to obtain a jury trial at which both equitable and legal relief, including compensatory and, under certain circumstances, punitive damages may be awarded. Such damages may include:

1

a. Back pay, which can consists of wages, salary and fringe benefits the employee would have earned during the period of discrimination from the date of termination (or failure to promote), to the date of trial.

b. Compensatory Damages are allowed for future loss, emotional distress, pain & suffering, inconvenience, mental anguish & loss of enjoyment of life. The caps placed on compensatory damages do not apply in a Section 1981 claim.

c. Punitive Damages are limited to cases where the "employer has engaged in intentional discrimination and has done so with malice or reckless indifference to the federally protected rights of an aggrieved individual." There are no caps on punitive damages in a Section 1981 claim.

d. Injunctive relief is available when there is an intentional discriminatory employment practice. For instance, an employee can be reinstated and an employer can be ordered to prevent future discrimination.

## **PREVIOUS COMPLAINTS**

4. Listed below:

| Parties | Court | Complaint number | Nature of Suit | Opened | Closed |
|---------|-------|------------------|----------------|--------|--------|
| Underdue, Felicia Ann (Plaintiff) | Western District of North Carolina | 3:2014-cv-00183 | 442 | April 14, 2014 | June 20, 2016 |
| Wells Fargo Bank, N.A. (Defendant) | | | | | |
| Underdue, Felicia A. (Plaintiff) | Western District of North Carolina | 3:2016-cv-00653 | 445 | September 7, 2016 | |
| Wells Fargo Bank, N.A. (Defendant) | | | | | |
| Underdue, Felicia A. (Plaintiff) | United States Court of Appeals for the Fourth Circuit | 14-2253 | 3442 | November 17, 2014 | April 16, 2015 |
| Wells Fargo Bank, N.A. (Defendant) | | | | | |

2

| Underdue, Felicia A. (Plaintiff) | United States Court of Appeals for the Fourth Circuit | 16-1762 | 3442 | July 8, 2016 | |
|---|---|---|---|---|---|
| Wells Fargo Bank, N.A. (Defendant) | | | | | |

## JURISDICTION, VENUE AND PARTIES

5. The jurisdiction of this court is based on 28 U.S. Code § 1331 - The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

6. That at all times hereinafter mentioned, Felicia Ann Underdue (hereinafter referred to as the "I", "Plaintiff" and/or "Underdue"), was and is a resident of Harrisburg, NC, State of North Carolina.

7. That at all times hereinafter mentioned, the Defendant, Wells Fargo Bank, N.A, (hereinafter referred to as "Wells Fargo", "employer", "Defendant" and/or "the bank"), which was organized and is existing under the laws of the State of California. That the Bank has one of its regional offices and a place of business in the City of Charlotte, County of Mecklenburg, State of North Carolina.

## INTRODUCTION-PRECEDENT

8. That at all times hereinafter mentioned from April 07, 2013, thru October 29, 2014, Plaintiff Underdue was employed by Wells Fargo Bank, N.A. Underdue was entrusted as Customer Service Representative II (hereinafter referred to as "CSR II") in the Email Department of the Customer Information Center (hereinafter referred to as "CIC") location in Charlotte, North Carolina.

9. Following the filing of complaints with the Equal Employment Opportunity Commission (EEOC) dated as follows, Susan Lybrand (white/Caucasian female manager), Jeremy Whicker (white/Caucasian male manager that supervised Susan Lybrand), Kendra Brown (black/African American female manager) and Harley Jones (white/Caucasian male attorney) subjected the Plaintiff to hostile racially motivated treatment, retaliation and intimidation at various times during the four years allowed to report their actions for a Section 1981 complaint:

3

a. Complaint one: Initiated on August 16, 2010 – Right to Sue issued on October 12, 2011.

b. Complaint two: Initiated on May 6, 2013 – Right to Sue issued on October 24, 2013.

c. Complaint three: Initiated on January 27, 2014 – Right to Sue issued on January 28, 2014.

10. Plaintiff Underdue began her banking career with First Union Bank, which was acquired by Wachovia Bank N.A., which was then acquired by Wells Fargo Bank N.A. from 1997 to 1999 and 2000 to October 2014.

11. During the timeframe allowed by Section 1981; April 11, 2013 thru April 11, 2017, Plaintiff Underdue has experienced various injustices which include her being wrongfully terminated and financially ruined thereby causing her to repeatedly seek the guidance of the the EEOC, Western District Court of North Carolina, the Fourth Circuit Court of Appeals, Employee Relations, Human Resources (HR), Jeremy Whicker, and all the leaders in her line of business up to and including Chief Executive Officer; previously John Stumpf/currently Timothy J. Sloan to put an end to the racially hostile, harassing, retaliatory and intimidating events that have been directed at the Plaintiff by Kendra Brown, Susan Lybrand, her peers and/or legal counsel as an employee, former employee and now as a Civil Rights Plaintiff.

12. Wells Fargo's Policies failed to provide Plaintiff Underdue with any protection from the racially hostile harassing, retaliation and intimidation that plagued her as an employee and continue to do so as the Plaintiff against the Defendant due to the reported complaints to leadership, HR and the EEOC for a work environment that was free of racially hostile, harassing, retaliatory and intimidating events. These events should also be referred to as racially hostile, harassing, retaliatory and intimidating Workplace Bullying and Harassment. As an employee, Wells Fargo's employment policies failed to prevent the continued attacks that occurred through the date of the Plaintiff's wrongful termination on October 29, 2014 through the present. (See attached Exhibit A; Wells Fargo Team Member Handbook 2014)

4

## GENERAL ALLEGATIONS FOR VIOLATION OF SECTION 1981

13. Plaintiff Felicia Ann Underdue is a black/African American who qualifies for protection against violations of racial discrimination under Section 1981 of the Civil Rights Act of 1866; 42 U.S.C. § 1981 Violation.

14. "Plaintiffs asserting claims of race discrimination in employment often bring claims under both *Title VII of the Civil Rights Act of 1964* (Title VII) and *Section 1981 of the Civil Rights Act of 1866* (Section 1981) based on the same sets of facts. Courts frequently analyze Section 1981 and Title VII claims identically, leading some employers to view them as essentially the same." (That's So 1981: Comparing Title VII and Section 1981 by Practical Law Labor & Employment, Published on 15 Oct 2013 • USA (https://content.next.westlaw.com/8-545-5185?__lrTS=20170406033715810&transitionType=Default&contextData=(sc.Default)&firstPage=true&bhcp=1). To ensure justice is served, Plaintiff Underdue now wishes to ensure her rights under Section 1981 have been properly pleaded and addressed by the Western District Court of North Carolina for the full timeframe allowed.

15. Plaintiff Underdue respectfully request the events outlined in Underdue v. Wells Fargo 3:14-cv-00183-RJC Exhibit 1(I); Timeline of Harassment, Retaliation and Intimidation (and/or all exhibits provided in association with Docket entry number 32 of 3:14-cv-183-RJC) be admitted for review due to the Defendant's members of leadership and various counsel being white/Caucasian. While Kendra Brown is also black/African American, her actions were frequently in support of and/or as a proxy acting on behalf of our white/Caucasian leadership members, management peers and/or legal counsel who were white/Caucasian.

16. In addition to the events occurring directly within the Plaintiff's racially hostile harassing, retaliatory and intimidating work environment, the Plaintiff was forced to engage in racially hostile harassing, retaliatory and intimidating contact from the internal counsel Harley Jones who is located in one of Wells Fargo's banking centers in the downtown section of Charlotte, NC.

17. On or about May 1, 2014, Plaintiff Underdue was notified by Kendra Brown that the internal counsel handling the complaint filed with the Western District of North Carolina; Underdue v. Wells Fargo 3:14-cv-00183 would be Harley Jones in the Law Department in Charlotte, NC.

18. Without authorization, Harley Jones provided my personal cell phone number to outside counsel; Keith Weddington that would be handling the complaint; Underdue v. Wells Fargo 3:14-cv-00183. (See Exhibit C: HJ Report to HR)

5

19. Harley Jones, legal counsel for the Defendant has shown a pattern of hostile racist discriminatory behavior which frequently results in his refusal to speak to the Plaintiff.

   a. On or about May 1, 2014, he refused to contact the Plaintiff to obtain permission for contact via her personal cell phone for himself and/or legal counsel and instead directed Kendra Brown, Plaintiff Underdue's black/African American manager to advise her of the violation of her privacy.

   b. On May 05, 2015, Plaintiff filed a complaint with the United States Department of Labor's Wage & Hour Division to collect the pay owed during mentoring hours. This complaint was handled by Harley Jones who refused to speak directly with the Plaintiff during the Conciliation process and ignored questions and/or request for instructions when discussing the handling of taxes from the agreed upon payment (See Exhibit D: Communications with Harvey Jones/John Stumpf). The refusal by Harley Jones, a white/Caucasian, to communicate with the Plaintiff, a black/African American, resulted in a temporary financial loss of the back pay paid to the Plaintiff.

   c. On April 4, 2017, Harley Jones engaged in a court ordered conference for the following: Wrongful Termination Complaint: Underdue v. Wells Fargo, N.A. 3:16-cv-00653-RJC. Harley Jones and/or hired counsel Keith Weddington requested of the Plaintiff if she would agree to skip introductions. Plaintiff agreed. Harley Jones' continued refusal to communicate directly with the Plaintiff was expected. Harley Jones, the Defendant's white/Caucasian male attorney, refused to communicate with the Plaintiff, a black/African American female.

   d. On April 4, 2017, after more than four hours of mediation, it became clear to the Plaintiff that Harley Jones had appeared on behalf of the Defendant without full authority to resolve the Complaint resulting in an impasse. The opportunity for the Plaintiff to engage in the Pro Se Settlement Assistance Program was lost as a result.

      i. Note: The assistance of Attorney Kevin Murphy was greatly appreciated, however his services were abused and lost to the Plaintiff following the racially hostile, harassing, retaliatory and intimidating meeting with the Defendant. The Plaintiff had advised the appointed counsel to expect such an outcome from the Defendant due the previous racially hostile, harassing, retaliatory and intimidating experiences with the counsels in attendance.

20. On or about the following dates May 9, 2014, May 12, 2014, and August 29, 2014, the Plaintiff requested to be moved from the Email Department due to continuously having to report racially hostile, harassing, retaliatory and intimidating interactions being directed towards her from leadership and peers as outlined in Underdue v. Wells Fargo 3:14-cv-00183-RJC Exhibit 1(I); Timeline of Harassment, Retaliation and Intimidation (and/or Docket entry 32 of 3:14-cv-183-RJC).

21. On or about July 3, 2014, Plaintiff Underdue received a letter from the Defendant's outside counsel; Keith Weddington that proposed an offer that included her termination from her employment. This offer was declined. Included in this communication were threats intended to make the Plaintiff fear a fair objective psychiatric review of her reported disabilities.

22. On July 9, 2014, an Order of Protection from the implied threats from outside counsel was sought by Plaintiff Underdue shortly after the filing of case 3:14-cv-00183 in the District Court for the Western District of North Carolina, Charlotte Division. The Order of Protection was for the named Defendants, which included Kendra Brown and Susan Lybrand. The request was declined on July 15, 2014. (See Underdue v. Wells Fargo 3:14-cv-00183-RJC Docket entry number 13)

23. On or about June 15, 2013, Plaintiff Underdue was granted approval to engage in mentoring to increase her knowledge in the field of Information Technology which would enable the Plaintiff to obtain a position outside of the Email Department. (See Exhibit E: Development Plan)

24. Plaintiff Underdue was not made aware that Wells Fargo policies required she be paid when engaging in mentoring or training until on or about March 24, 2014 when she spoke with a Human Resources Advisor named Amy McKinney. The advisor inform Plaintiff Underdue during a recorded call that she would contact her leaders to advise them of the Career Development rules. Plaintiff Underdue was unaware of any changes to her mentoring/training time being changed to paid time and continued mentoring/training as approved by Kendra Brown. The individual responsible for making the decision to pay the time was Jeremy Whicker, a white/Caucasian male department manager that provided leadership to the leaders; Susan Lybrand and Kendra Brown.

25. The mentoring program in the Information Technology area that began on or about September 6, 2013. Under the guidance of Babu Yarlagadda, Plaintiff Underdue's mentoring and training had become sufficient to begin posting for positions in the Information Technology area on or about November 13, 2013. These positions would have enable the Plaintiff to obtain a position that could increase the Plaintiff's salary by 50% to approximately 200% or more annually. (See Exhibit F: Job Applications)

26. On or about March 20, 2014, Plaintiff Underdue learned about a new mentoring opportunity called Mentoring Circle. Plaintiff sought out permission to participate in

7

the sessions. Once again, Jeremy Whicker, a white/Caucasian male department manager that provided leadership to the leaders; Susan Lybrand and Kendra Brown, authorized the attendance in the sessions but attendance would be without pay.

27. Upon meeting the members of the mentoring sessions in or about April 2014, Plaintiff Underdue became aware that she was the only person who was being forced on her scheduled work days to use vacation time and/or unpaid time during their attendance at the sessions. The behavior of Jeremy Whicker was clearly racially hostile, harassing, intimidating and retaliatory. His actions toward Plaintiff Underdue were clearly intended to discourage and prevent Plaintiff Underdue from seeking any growth as an employee at Wells Fargo and/or to prohibit her from finding any new positions with Wells Fargo.

28. Since it was Wells Fargo's policy that Career Development activities be paid, Plaintiff Underdue was awarded the unpaid mentoring/training time through Wells Fargo's Law Department; Harley Jones after contacting the Department of Labor.

29. On October 1, 2014, Plaintiff Underdue received a call on her cell phone from Counsel Keith Weddington to discuss the termination of her employment. Plaintiff Underdue declined the second offer for a settlement that would include her termination.

30. On October 13, 2014, Plaintiff Underdue requested a copy of her Official Personnel File (hereinafter referred to "OPF") from Human Resources Advisor Lacey Reid. On October 14, 2014, Plaintiff Underdue located falsified entries on her annual review for year ending in 2012. The annual rating was dropped from 3.45 out of 5 (five) (dated January 17, 2013) to 2.95 on February 15, 2013 while the Plaintiff was out on medical leave. This downgrade made Plaintiff Underdue ineligible to post out of the Email Department upon her return to work without her knowledge. (See Exhibit G: Falsification)

31. While the various forms of discrimination inflicted upon Plaintiff Underdue by Susan Lybrand began with religious discrimination (See Exhibit H: Religious Accomodation: Lent), the racially hostile, harassing, retaliatory and intimidating interactions being directed towards Plaintiff Underdue from Susan Lybrand had its roots in the schedule change that placed Plaintiff Underdue working Sundays from 2008 through March 25, 2012. If Plaintiff Underdue wished to engage in Lenten activities, it required groveling to racially hostile, harassing, retaliatory and intimidating leadership team. The hatred directed at Plaintiff Underdue grew to include nearly every aspect of her employment; training, scheduling, career development and job opportunities through October 29, 2014 up to and including the falsification of Plaintiff Underdue's 2012 annual review. The racially hostile, harassing, retaliatory and intimidating actions of Susan Lybrand (a white/Caucasian manager) were supported by her leadership team and superiors up to CEO John Stumpf despite Plaintiff Underdue's complaints to Human Resources, Employee Relations and the EEOC.

32. During the month of July 2014, efforts to create to a hostile environment continued. Some employees and dear friends of many years opted to discontinue all association with the Plaintiff. This was a blatant attempt to force the Plaintiff to quit her job due to causing her extreme duress. At the request of long time peers and fellow team members, Plaintiff Underdue could not even say "Good Morning" to the peers that she had worked with for nearly 7 to 10 years.

33. On September 24, 2014, Kendra Brown and other employees/friends staged an attempt to intimidate and harass the Plaintiff at work. Kendra Brown requested the Plaintiff reduce the volume of music she used to cocoon herself from the hostile environment. Shortly thereafter, the Plaintiff heard a lot of noise and efforts to make her aware of the presence of people behind her. Directly standing behind the Plaintiff were Kendra Brown (KB) and friends/peers. They all stood behind the Plaintiff with fist balled up as if to hit Plaintiff Underdue. Plaintiff Underdue immediately turned around and waited to be attacked. The group disbanded following no response from the Plaintiff.

34. On or about September 24, 2014, Plaintiff Underdue reported the efforts of KB and her friends/peers. She was advised by Human Resources and Corporate Security that because Kendra Brown, nor her peers, had physically harmed the Plaintiff, nothing could be done about the threats that had been communicated to her or to alleviate the hostile work environment. (See Exhibit I: Corp Security Suarez)

35. On or about October 1, 2014, Counsel for case number 3:14-cv-00183 contacted Plaintiff Underdue via telephone to offer to end her employment and to propose settlement terms that would include the end of her employment prior to retirement. The Plaintiff declined. She wished to be removed from the hostile environment currently being worked, which was the Email Department, to one of the numerous opportunities available through the Defendant; Wells Fargo Bank, N.A.

36. On October 7, 2014, I filed Restraining Orders against Kendra Brown, Susan Lybrand, Brenda Hauk and Yashiba Douglas to end the harassment, intimidation and retaliation that I was experiencing. Following the approach of Kendra Brown and her friends/peers who stood behind me with their first balled up, I began experiencing breathing difficulties, heightened anxiety, extreme fear and paranoia while at work. Corporate Security would do nothing unless I had been physically harmed. By the time this matter was brought before a judge on November 5, 2014, I had been terminated and the Restraining Orders were denied.

37. On October 23 2014, Plaintiff reported to the following members of leadership, John Stumpf; CEO, Carrie Tolstedt, James P Smith, Carey Mulligan, and Jeremy Whicker the actions of Susan Lybrand and attached the email that requested to be removed

9

from the Email Department due to the current hostilities being directed at her. (See Exhibit J: Stumpf Please Transfer Me)

38. On October 29, 2014, Plaintiff Underdue was wrongfully terminated after years of heinous attempts to force the Plaintiff to quit from the Email Department.

39. On December 22, 2014 Plaintiff agreed to an arranged mediation which was held at the EEOC's Philadelphia, PA office. Plaintiff Underdue declined Wells Fargo's mediation offer to resolve EEOC Charge 430-2015-00219 since it did not include reinstatement. (See Exhibit K: Mediation 1)

40. On or about April 24, 2015 Plaintiff Underdue received another offer from Wells Fargo via Mediator Jimmy Jones with the Charlotte Division of the EEOC. This unauthorized mediation attempt was not agreed upon by Plaintiff Underdue. The offer included an attempt to resolve Charge 430-2015-00219 and the pending complaint with had been in the Fourth Circuit Court of Appeals for review. Communications on or about the following dates and times before Jimmy Jones would allow my case to be forwarded to an investigator:

    - 04/24/2015 at 8:09 PM
    - 04/24/2015 at 9:57 PM
    - 04/24/2015 at 10:16 PM
    - 04/25/2015 at 12:16 AM
    - 04/25/2015 at 7:47 AM
    - 04/25/2015 at 9:21 AM
    - 04/25/2015 at 9:41 AM
    - 04/25/2015 at 9:50 AM

41. Plaintiff Underdue declined what appeared to be an unauthorized offer from the Defendants via Jimmy Jones since it did not include reinstatement. Once again, neither Harley Jones (white/Caucasian male internal attorney at Wells Fargo) nor Keith Weddington (white/Caucasian male external attorney on behalf of Wells Fargo) would meet and/or engage in settlement talks without the use of a proxy when attempting to negotiate with Plaintiff Underdue. (See Exhibit L: Mediation 2)

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Underdue seeks the following:

1. Immediate temporary reinstatement of employment into a position matching the Plaintiff's current skill set; Paralegal, Life/Health Insurance and/or an Analyst position. Working from home would also be acceptable to the Plaintiff. (See Exhibit M: Performance 2014-Eligible for New Positions)

10

2. Reinstatement of employment without a loss of tenure, benefits and/or any other losses as she would have had as an employee through the date of an agreed upon settlement.

3. Damages in the amount of $5,000,000.00 which would include damages for the Intentional Infliction of Emotional Distress.

4. The Plaintiff seek any such compensation and/or relief the Court deems just and proper.

5. The Court enter a judgment in favor of the Plaintiff and against the Defendant.

6. The Court enter an award in favor of the Plaintiff and against the Defendant for punitive damages caused by the Defendant's racially hostile, harassing, retaliatory and intimidating actions which were intentional, willful, wonton, and reckless in the harm caused to Plaintiff Underdue.

7. The Court enter a judgment in favor of the Plaintiff against the Defendant for the deliberate financial distress caused to Plaintiff Underdue.

8. Lastly, the Plaintiff respectfully demands a jury trial and prays that the relief sought be granted by a jury of her peers.

Respectfully submitted this the 12th day of April, 2017.

*Felicia Ann Underdue*

Felicia Ann Underdue, Plaintiff - Pro Se

3944 Town Center Rd

Harrisburg, NC 28075

Telephone: 704-488-8189

11

*Exhibit A*



# Wells Fargo Team Member Handbook

July 2014

Together we'll go far



*Cover Pg 1*

# Workplace Conduct

Your actions must always reflect the highest possible standards of business conduct and ethics. You're expected to use good judgment, integrity, and common sense in making work-related decisions and to be accountable for your actions. This includes avoiding conduct that is likely to damage Wells Fargo's business or reputation.

The way you handle interactions, in person, in writing, or electronically with your fellow team members is important to the success of your work environment. You're expected to treat your fellow team members with courtesy, respect, and professionalism (see Electronic Communications and Social Media). You're also expected to treat your supervisor and other managers with respect, which includes avoiding insubordinate behavior (see "insubordination" in the Glossary).

Unprofessional and inappropriate team member behavior includes but is not limited to:

- Outbursts
- Yelling
- Rudeness
- Bullying
- Distracting behavior during work time (such as being on your electronic or mobile device)
- Conduct that interferes with your or another team member's ability to perform job duties or provide effective customer service (see Violence-Free Workplace)

It may also include conduct that is welcome between team members but is inappropriate in the workplace or at work-related events. Exhibiting unprofessional and inappropriate workplace behavior violates Wells Fargo's policies.

## Providing information

To uphold our standards of workplace conduct, sometimes it may be necessary for Wells Fargo to initiate an investigation or a fact-finding process. In these cases, it's very important that we learn all the relevant information from those who are aware of the situation. If you're asked to be part of such a process, you're expected to cooperate fully and honestly and to respect the confidentiality of the process. Additionally, in certain situations, you may be placed on administrative leave so that the company has time to thoroughly review the circumstances that are under investigation. If this happens, you will be given information about the terms and conditions of your leave at that time. If you have questions about the request to participate in a fact-finding process, contact your HR Advisor team.

## Consequences

You're expected to conduct yourself in a professional manner and to use good judgment in all aspects of your conduct as a Wells Fargo team member.

***Important:*** *Failure to observe all aspects of the policies outlined here, including failure to participate fully and honestly in any investigative or fact-finding process initiated by Wells Fargo, is grounds for corrective action, which may include termination of your employment.*

Case 3:17-cv-00196-RJC   Document 1   Filed 04/12/17   Page 13 of 41

# Nonretaliation Policy

- No team member may be retaliated against for providing information in good faith about suspected unethical or illegal activities including fraud, securities law or regulatory violations or possible violations of any Wells Fargo policies, including the Code of Ethics and Business Conduct and the Information Security Policy.
- No team member may be retaliated against because that team member has in some manner opposed an employment practice that the team member, in good faith, believes violates federal or state laws, rules, or regulations.
- No team member may be retaliated against because he or she filed a charge, truthfully testified, provided assistance, or participated, in good faith, in an investigation, proceeding, or hearing related to or arising from an allegedly unlawful employment practice.
- No team member may be retaliated against for asserting rights established by a federal or state law.

For purposes of this policy, "retaliation" means subjecting a team member to any harmful conduct, whether or not it occurs at the workplace, including but not limited to any conduct that has a material adverse affect on a team member's compensation, working conditions, or work environment in response to one of the actions noted above.

If you believe that you or someone else has been retaliated against, you must report it as soon as possible to one of the following:

- Your supervisor or manager
- Your HR Advisor team
- Corporate Employee Relations at 1-888-284-9147

Wells Fargo will take measures to protect team members from retaliation.

**Important:** *Engaging in retaliatory behavior in violation of this policy is grounds for corrective action, which may include termination of your employment.*

Case 3:17-cv-00196-RJC   Document 1   Filed 04/12/17   Page 14 of 41

# Career Development

Learning and career development are important concepts at Wells Fargo. We empower you to explore, grow and achieve through a full range of development opportunities. Development is a business imperative for our company, and it is rooted in the belief that everyone can benefit from ongoing learning and focused development. We believe that learning and career development should:

- **Reinforce our values and support the needs of the business** by embedding our Vision & Values in all of our development activities and ensuring that development opportunities reflect and support the company's business strategies and goals.
- **Focus on your strengths** with training and tools to help you identify your talents, turn them into strengths, and grow from good to great.
- **Include everyone** by recognizing that all team members — whether you are an individual contributor or a manager — are called to be leaders and can benefit from development.
- **Define expectations** by clearly stating the knowledge, skills, and behaviors for success and helping you identify ways to acquire or develop them.
- **Target your needs** by defining the common learning needed at various stages of development while recognizing and prioritizing the unique needs of team members.
- **Share accountability** by encouraging team members to be actively involved in their own development and holding managers accountable for developing team members.
- **Offer a range of activities** that include programs and courses, relationships and feedback, and experiences. Your development will be most effective when you choose and blend a variety of development opportunities.

## Orientation and getting started

As a new team member, your first weeks and months on the job are important in establishing successful, productive working relationships. Your manager may conduct an initial orientation to give you the information you'll need to do your job, participate in benefits and programs, and understand available resources. As part of your orientation, you may be invited to attend a group orientation session as well. Each line of business may establish its own time frames during which new team members should demonstrate job proficiency.

## Development

Your career at Wells Fargo can be as varied and dynamic as you want it to be. The company offers a range of career development options and believes in fostering an environment in which you can explore your talents and reach your full potential.

At Wells Fargo, development can mean many things. You may focus on enhancing your current skills, growing skills toward a future role, or even taking steps to learn new skills and change directions entirely. Regardless of your career goals, your development can take on many forms. Once you've identified where you want to go, Wells Fargo has several ways to help you get there. Development options include:

- **Experiences:** Hands-on learning in real situations, either in or outside of your current role.
- **Relationships and feedback:** Learning from others through coaching or mentoring relationships, networks, feedback, or observing and working with role models.
- **Programs and courses:** Formal education and training through in-person or online courses and informal learning opportunities such as webinars, books or videos.

Your line of business also provides functional and product training that is specific to your job or business within Wells Fargo. Talk with your manager to learn about training that is required or recommended for your job.

## Leadership

The Wells Fargo Leadership Model offers a simple yet comprehensive way to define what it takes to be successful at Wells Fargo. It is based on three key leadership areas — Lead Yourself, Lead the Team, and Lead the Business — that apply to everyone, regardless of line of business, job title, role, or level. Development opportunities support all three areas and are aligned to our competency framework that defines extraordinary performance for managers and individual contributors.

## Jobs

Case 3:17-cv-00196-RJC   Document 1   Filed 04/12/17   Page 15 of 41

One way to develop your career is to explore other jobs at Wells Fargo. The online Jobs site on *Teamworks* (see <u>Internal Job Opportunities</u> and <u>Employment and Hiring</u>) allows you the opportunity to access current job postings so that you can change jobs, transfer, or advance according to your qualifications and goals.

## To learn more

To learn more about how to plan your development at Wells Fargo, visit the Career & Development website on *Teamworks*, where you can find assessments, resources, and activities to enhance your performance and align with the direction you want to take your career.

Case 3:17-cv-00196-RJC   Document 1   Filed 04/12/17   Page 16 of 41

# Performance Management

Performance management is a key aspect of our overall culture here at Wells Fargo — it's a tool that provides each of our team members with the opportunity for personal responsibility, accountability, reward, and recognition. Performance management can help us outperform the competition, develop a stronger management culture, and help team members reach their potential.

Managers, at the beginning of the process, communicate to team members what is expected, why it is important, and how they can be successful. Throughout the year, managers provide ongoing feedback on progress toward goals and, at the end of the year, complete the annual performance review.

## Performance reviews

The main purpose of the performance review is to provide you with feedback about how you're doing and to suggest ways to improve your performance. This is accomplished through communication between you and your manager about:

- Job requirements and standards
- Working relationships
- Future expectations
- Any work-related problems or issues

Your performance review is also used for making salary decisions (see Merit Reviews) and other decisions about future job opportunities.

## Your comments

You should have a chance to read the documentation of your performance review before it is included in your Official Personnel File. You are also free to write your own comments, explanations, or disagreements to be included in your Official Personnel File.

## Performance rating scale

The following rating scale is most commonly used for performance reviews:

*Performance is rated based on how well you met your "key objectives," which are those most critical to the performance of your job.*

| Rating | Description |
|--------|-------------|
| 5 | Significantly above all key objectives |
| 4 | Consistently above all key objectives |
| 3 | Met all and may have exceeded some key objectives |
| 2 | Met some but not all key objectives |
| 1 | Significantly below all key objectives |

## Timing of performance reviews

Your performance is generally reviewed on a regular basis as determined by your business group. However, performance reviews may be completed more frequently when performance levels change — for example:

- For a team member who is new on the job.
- When the previous rating was a 1 (significantly below all key objectives) or 2 (met some but not all key objectives).
- If you transfer to another position.
- At the conclusion of a major project or assignment.

If you haven't had a formal performance review within the last 12 months, let your manager or your HR Advisor team know.

Case 3:17-cv-00196-RJC   Document 1   Filed 04/12/17   Page 17 of 41

# Corrective Action

## Informal warning

In most cases, if your performance, conduct, attendance, or punctuality doesn't meet specified requirements, your manager will meet with you to discuss the issue. An informal warning that documents a need for improvement can be verbal only or by written memo to you, with a copy kept in the manager's desk file.

The informal warning generally contains:

- The specific areas of performance, conduct, or attendance that don't meet the requirements or expectations of your assigned job duties.
- A plan and time frame for improving your performance that you and your manager develop.
- A warning that if the issue continues, it can lead to a formal warning or termination of employment.

## Formal warning

If your performance, conduct, attendance, or punctuality doesn't appear to improve or keeps declining after an informal warning — or if something happens to cause the escalation of the performance counseling and corrective action process — then your manager may document the situation in a formal warning.

The formal warning generally contains:

- An explanation of the issue.
- A definition of the expected level of performance or the improved conduct or attendance needed.
- An improvement time frame.
- A warning that if the issue continues, it can lead to termination of employment.

The formal warning will become a part of your Official Personnel File and will remain in the file for the duration of your employment, regardless of improved performance or change in your position, business line, location, or manager.

## Final notice

Some situations that involve a serious one-time policy violation may require corrective action just short of termination. In a situation like this, you will receive a final notice (see the Glossary) advising you that if a similar situation, or any other serious policy violation, occurs again at any time during your Wells Fargo employment, your employment may be terminated immediately.

The final notice:

- Is typically a written memo.
- Will become a part of your Official Personnel File and will remain in place for the duration of your employment, regardless of any change in your position, business line, location, or manager.

If you receive any type of warning or final notice and if you are unclear about what it means for you, you should contact your manager or HR Advisor team as soon as possible.

## Termination

If you don't achieve the improvement in performance, conduct, attendance, or punctuality that was outlined in the informal warning or formal warning, your employment may be terminated. Employment can also be terminated if the situation documented in a final notice reoccurs or if the problem involves a breach of policy, including a violation of the Code of Ethics and Business Conduct or Information Security Policy, or if your performance or conduct is such that continued employment is no longer in the best interest of Wells Fargo. For examples of this kind of conduct and more information about situations appropriate for immediate termination, see Involuntary Termination.

Case 3:17-cv-00196-RJC   Document 1   Filed 04/12/17   Page 18 of 41

# Dispute Resolution

At Wells Fargo, we feel that it's essential to provide team members with a prompt, thorough review of any work-related problem. So we've developed a process through which each team member has an opportunity to use internal problem-solving resources.

Although we can't guarantee that every team member will always be satisfied with the outcome, we can make sure that all team members have dispute resolution methods available when they're needed. In addition, we prohibit retaliation against any team member for using the dispute resolution process (see Team Member Professionalism).

## Overview of the dispute resolution process

If you have a work-related dispute, you should first try to resolve it directly with your manager — he or she is usually closest to the situation and in the best position to review it.

If you need alternatives or to escalate your dispute further, you can follow the process described on the Dispute Resolution Resources page. It's strongly recommended that you use these resources in the order they're shown — it's logical that those closest to your situation will be able to understand it best, so you'll want to go to those resources first.

This process is not intended to prevent you from discussing terms and conditions of employment at Wells Fargo. The process stops at any point you decide to discontinue it or when you've exhausted all the resources described on the Dispute Resolution Resources page.

It's important to begin the process promptly when the issue arises (normally within 30 days), because delay can affect Wells Fargo's ability to respond to your concerns.

Case 3:17-cv-00196-RJC   Document 1   Filed 04/12/17   Page 19 of 41

# Dispute Resolution Resources

## Your manager

In most cases, you should discuss any work-related issue with your immediate manager, because he or she is in the best position to help with a prompt resolution. For assistance with preparing for a meeting with your manager or additional support regarding the dispute resolution process, contact your HR Advisor team.

## Your manager's manager

After speaking with your manager, if you feel that you haven't been able to communicate effectively with him or her — or if you want someone else to review the situation — you can meet with your manager's manager (or another manager above your manager in the chain of reporting relationships) to discuss the issue. Again, for assistance with preparing for a meeting with your manager or additional support about the dispute resolution process, contact your HR Advisor team.

## HR Advisor team

After you've spoken with your manager's manager, if you feel that you haven't been able to communicate effectively with him or her — or if you want someone else to review the situation — you can contact your HR Advisor team. A member of this team will work to obtain related information to review the matter, help resolve work-related issues, and make recommendations to you or your group's management if appropriate. You may contact the HR Advisor team by calling **1-877-HRWELLS** (1-877-479-3557), option 3, or schedule an appointment by emailing hradvisor@wellsfargo.com.

## Additional review

After you've spoken with the HR Advisor team, if you still want your dispute reviewed further, you can contact Corporate Employee Relations to determine if further review is warranted based on the circumstances. A member of the Corporate Employee Relations team will inform you of the determination.

## Mediation

After you've spoken with the HR Advisor team, if there are still unresolved issues involving a legally protected right — for example, an allegation that the termination or terms of your employment involved discrimination, harassment, or retaliation based on race, color, gender, national origin, religion, age, sexual orientation, gender identity, genetic information, physical or mental disability, pregnancy, marital status, or status as a protected veteran — you can request mediation. Mediation will be scheduled only if Wells Fargo agrees that it's appropriate. The mediation program doesn't alter or modify Wells Fargo's "employment at will" policy.

Mediation involves an external, objective, professional mediator who will provide a neutral forum where you and the company can try to resolve the issues. The mediation process emphasizes open discussion and seeks to resolve the issue through compromise. It's not a formal process like arbitration or litigation, where a decision-maker decides which party will prevail.

If you request mediation and Wells Fargo agrees that it's appropriate, we will make the arrangements. If your request for mediation is denied, then the dispute resolution process ends at that point.

### Cost

There's a cost for mediation, which will be shared between you and Wells Fargo. Your share is 10% (up to a maximum of $200), and Wells Fargo's is 90% plus any expenses that exceed your $200 maximum.

### Timing

If you decide to ask for mediation, we must receive your request for mediation within 30 days after you have escalated your concerns and received a resolution to your dispute.

Case 3:17-cv-00196-RJC   Document 1   Filed 04/12/17   Page 20 of 41

**How to request mediation**

For more information about mediation or to initiate a request, contact Corporate Employee Relations at 1-888-284-9147.

# Merit Reviews

The main objective of our salary program at Wells Fargo is to reward team members for their individual performance in contributing to our company's success. Most team members are eligible for merit reviews, which include a review of both performance (see Performance Management Process) and salary.

## Merit increases

A merit review may or may not result in a merit increase to your salary. Rather than using an automatic formula, your manager determines merit increases based on such things as:

- Your job performance.
- The number of months since your last performance review, merit increase, or promotion.
- Your salary relative to your job's Market Reference Point and competitive market pay.
- Variable pay opportunities, such as incentives or bonuses.
- The salary budget of your business group.

Team members who are lower performers or whose salaries are well above competitive market pay for the job may receive smaller increases or no increase. Team members who are consistently high performers and are at the top of the pay distribution range are not eligible for an increase in their base pay; however, they may be eligible for a lump sum merit increase.

## Review timing

Your performance and salary are generally reviewed during the focal review period, which takes place every year around the same time. You may also receive a review at other times at your manager's discretion (see Timing of Performance Reviews) or because of one of the circumstances described below.

### Annual Focal Review

This is the common review period and process providing an overall review of performance and compensation for most team members. If you transfer or are hired into a business group with a focal review period, your manager will explain how it affects you — in most cases, your next review will occur from four to 15 months after your previous one.

### Transfer or promotion

If you transfer or are promoted to a new job, you may receive a performance review from your current manager if it's been six months or more since your last review (if it's been less than six months, your manager won't conduct a formal review but will simply send the hiring manager some performance notes to use at your next review).

The hiring manager will take into consideration the amount of time since your last merit increase, the market rate of pay for the new job, and your applicable skills and experience (see Promotions and Job Changes) when considering any compensation decision for your new role.

### Leave of absence

If you are on an unpaid leave of absence during the focal review period, generally any applicable merit increase will be processed on the focal review effective date, but any increase to your salary won't become effective until you return to work and your merit review date has passed. (An "unpaid leave" means that you're not receiving your regular Wells Fargo salary, even though you may have other sources of income such as short-term disability or long-term disability benefits — see Income Sources During Leave). In addition, if you are on a Salary Continuation Leave or working in a Short-Term Assignment Resource (STAR) position, you are not eligible for a merit increase.

## Eligibility for merit review

All regular and part-time team members may be eligible for merit reviews of performance and salary under the guidelines in this handbook unless a stated exception applies.

Case 3:17-cv-00196-RJC   Document 1   Filed 04/12/17   Page 22 of 41

# Privacy Overview

The term "privacy" relates to our information sharing and solicitation practices that pertain to consumer and business customers and prospective customers.

We use this confidential customer information to:

- Service our customers' accounts.
- Develop new products and services.
- Improve internal cross-selling.
- Comply with legal obligations and manage our business.

## Privacy's role within Wells Fargo

Within Wells Fargo, the Corporate Privacy Office develops and administers enterprise policies, practices, and requirements for all business groups to ensure that privacy requirements are appropriately followed. The Corporate Privacy Office also reviews privacy-related policies, practices, and procedures established by the lines of business. The Corporate Privacy Office manages Wells Fargo's Privacy and Solicitation Policy.

Privacy and Solicitation Policy is a company-wide policy applicable to our U.S. businesses based on federal and state laws and explains how Wells Fargo uses and protects the information that our customers or prospects provide to us. The policy also establishes company-wide guidelines to ensure that information sharing and solicitation preferences for both customers and noncustomers are consistently honored as required across all lines of business.

## Your responsibilities

**It is important that team members with any type of customer contact or access to customer information read and understand Wells Fargo's Privacy and Solicitation Policy.** As part of required training, team members are expected to acknowledge that they will read and adhere to the provisions of this policy.

The responsibility for adhering to Wells Fargo's Privacy and Solicitation Policy resides with each business group. Businesses are required to demonstrate that they have processes in place to manage information sharing and solicitation practices in their organizations in accordance with federal, state, and provincial laws and regulations.

## Privacy policy disclosure

Financial institutions are required to provide a disclosure of privacy policies and information-sharing practices to every individual customer at the time an account is opened and annually thereafter.

The Wells Fargo U.S. Consumer Privacy Notice (and various custom versions), maintained by the Corporate Privacy Office, helps consumers understand their privacy rights and solicitation choices. The notice:

- Describes how Wells Fargo collects, shares, and protects customer information.
- Outlines customer choices on how their personal information may be shared by and within Wells Fargo.
- Explains how customers may record preferences for how they wish to be contacted for marketing purposes.

The notice also highlights key elements of our commitment to protect our customers' privacy:

- We do not share customer information for joint marketing purposes with other financial companies.
- We do not share customer information with nonaffiliates who may wish to market their products to our customers.
- Within the Wells Fargo companies, we carefully protect customer information from unauthorized access and use, with security measures that comply with federal law, including computer safeguards and secured files and buildings.

Case 3:17-cv-00196-RJC   Document 1   Filed 04/12/17   Page 23 of 41

# Exhibit B



~~attachment 1.~~

Wells Fargo Bank

Customer Connection
Online Customer Service
MAC U1252-030
5201 Amelia Earhart Drive
Salt Lake City, UT 84116-2857

10/29/2014

Felicia Underdue
3944 Town Center Road
Harrisburg, NC 28075-7464

Dear Felicia:

We have reviewed your conduct regarding your workplace behavior.

**We have determined that you have violated the following policy or policies:  Workplace Conduct Policy.**

Over the course of last year or more, you have made repeated accusations of bullying and harassment against your management team and fellow team members. Not only have these accusations been found to be baseless, exaggerated and blown out of both context and proportion, the allegations lack a reasonable good faith basis that your supervisors or coworkers are treating you unfairly or acting with some ill motive. For example, you have accused your management and fellow team members of conspiring to falsify Team Member Connection Survey scores without any factual basis.

Your constant complaints have significantly degraded the work environment for both your supervisors and your peers. As a result of your negative impact on the morale and functioning of this work team, and the fact that your meritless allegations continue to needlessly consume unending amounts of management and HR time and attention, we have decided to terminate your employment.

Based on the violation(s) listed above, we have terminated your employment with Wells Fargo effective October 29th, 2014.

If you have questions about your termination or wish to have the termination decision reviewed, contact Employee Relations at **1-888-284-9147** to be connected with an HR professional who supports your line of business. If you have any questions about your final pay or benefits, contact the HR Service Center at **1-877-479-3557.**

For verification of your employment for future employment opportunities, instruct prospective employers to go to www.theworknumber.com to verify basic employment information — your employment status, dates of employment, and job title. The Wells Fargo company code for such inquiries is **14566**. If your prospective employer requests to verify salary information, you must first log on to www.theworknumber.com and obtain a Salary Key to provide the verifier. Alternatively, you or your verifier may call The Work Number at 1- 800-996-7566 for assistance. Using a Salary Key helps ensure that your salary information is released only at your request.

We wish you the best in your future endeavors.

Sincerely,

Jeremy Whicker
Customer Service Manager 3
cc: Official Personnel File, S 4101-166 [*1056318.*]

Together we'll go far

Wells Fargo Bank, N.A.

Exhibit C    HJ Report to HR

-----Original Message-----
From: felicia.underdue@wellsfargo.com [mailto:felicia.underdue@wellsfargo.com]
Sent: Thursday, May 01, 2014 7:55 AM
To: Online Recruiting Staff Mgt
Subject: Electronic Personnel File - General Inquiry


Previously contacted HRSC regarding this issue: no

Name: Felicia Underdue

Role: Team Member

Employee ID: 1056318

Last 4 digits of SSN: 2581

Email: felicia.underdue@wellsfargo.com<mailto:felicia.underdue@wellsfargo.com>


Team Member: Felicia Underdue

Team Member's Employee ID: 1056318


Category: Electronic Personnel File

Type: General Inquiry

Questions: NA

Details: Hello,

I recently filed a complaint with the Federal Court regarding my leaders.  The complaint did not require that I provide a phone number.  I received a call on my personal cell phone that was provided to Wells Fargo in case of emergencies.  I would like to know how and why my personal cell phone number was provided to the attorney representing these leaders when I have a working phone on my desk?  This invasion into my privacy was not a valid emergency.

Sincerely,

Felicia Underdue

 **Exhibit D**



**From:** Ms F. Underdue [mailto:msfunderdue@yahoo.com]
**Sent:** Tuesday, June 16, 2015 4:12 PM
**To:** Jones, Harley H. (Legal)
**Subject:** Release regarding Department of Labor-Wage and Hour Division, which also includes complaints regarding FSLA.

Hello,

Can you please tell me why a cleared canceled check showing I received the promised amount of $1,649.04 is not sufficient to show the resolution of my complaint regarding unpaid overtime?

It is my understanding that this is the standard process that is sufficient to close this type of complaint with them; Department of Labor-Wage and Hour Division, which also includes complaints regarding FSLA.

I simply wish to understand why I am being treated differently and/or outside of the normal process.

If I am paid this amount, it will fully resolve the complaint filed with the Department of Labor-Wage and Hour Division, which also includes complaints regarding FSLA for me.

If it is possible, I wish to be paid based on exemptions of "10" for federal and "10" for state. If this is not possible, please deposit the funds to my Bank of America account number ending in 6048 (either way) based on the exemptions last used for my payroll.

If possible, please authorize an off-cycle payment of the agreed upon amount to close my complaint with the Department of Labor-Wage and Hour Division, which also includes complaints regarding FSLA.

Note: Solely, this matter with this government agency can be updated to resolved.


Sincerely,


Felicia Underdue

# Exhibit D

# Page 2

Hello,

Happy 4th of July!

I wanted to keep you up-to-date on the type of integrity that does not properly reflect you (I hope).

Prior to agreeing to resolve a matter involving unpaid earnings during my active employment with Wells Fargo, I consulted twice with your Senior Legal Counsel; Harley Jones. Once below and again in person when I brought him the signed agreement.

He advised me he solely needed a W-9 to issue the check in the agreed upon amount; $1,649.04. We had discussed exemptions and he did not advise me any updates were needed after I specifically inquired with him about updating my exemptions if necessary.

While not doubting your integrity, I definitely did doubt the integrity of the legal counsels representing you here in North Carolina. Before committing any of the promised funds to any of the many outstanding debts I have, I waited for the anticipated gut-punch. As I prayed against such a blow, I was not surprised to receive a check for $1,042.63.

Maybe you can let Harley Jones know... I would have preferred a physical blow to match the pain I already feel. My creditors don't deserve the fallout from a wrongful termination, years of failed growth/promotions by bullying supervisors, or to have a victim of a white collar criminal that gets protection from legal counsel courtesy of her employer as their client. Unfortunately, I am this type of client and Lord willing... I will make it right with all of them.

Even now, I have this fairy tale belief that you are a better man than the counsel of North Carolina keeps showing me. One day... I hope the wool will be pulled from my eyes and I will either see that you are a man of integrity or I will see that this type of representation is a reality of who you are.

I will continue this fight against the injustices that seem to befall me from Wells Fargo.

No matter what...

Happy 4th of July! I wish you the best.

Sincerely,

Felicia Underdue

# Exhibit E   Development Plan

Months since your last logged meeting for an annual refresh of your development plan:   2

Months since your last logged meeting for a checkpoint on your development plan:   2

| Activity Name | Due On | Past Target |
|---|---|---|
| Using Corporate Library | 07/31/2013 | No |

| Type of Discussion | Date: | Logged By | Comments |
|---|---|---|---|
| Annual Refresh of Development Plan | 03/26/2013 | A925034 | Will continue planning for 2013 |
| Team Member/Manager Checkpoint | 03/26/2013 | A925034 | Will continue planning for 2013 |

**Development Goal:**   Leadership | 0 of 1 Completed

**Goal Type:**   Career Goal

**Goal Description:**   After experiencing little to no growth in nearly 13 plus years, as well as the slow removal of valued skills learned during this time, I am at a loss as to what to say now to the same members of leadership who have sought to ensure that I showed no growth. As a leader, I would ensure no one was ever treated this way.  I will be taking advantage of the Outreach Program for covered veterans and individuals with disabilities for starters.  I will be taking courses, both at work and independently,

**Activity:**   Using Corporate Library

**Action:**   Books, Videos, other media            **Competency:**  Practices Self-Development

**Activity Description:**  Locate and study resources in the Corporate Library. Current reserves

-The Basics of Business Etiquette
-Leadership and the one minute manager : Video
-The Way We're Working Isn't Working : CD : The Four Forgotten Needs that Energize Great Performance
-Brain Rules : CD : 12 Principles for Surviving and Thriving at Work, Home and School
-The No Complaining Rule : CD : Positive Ways to Deal with Negativity at Work

| Target Date: | Completed: | Planned Hours: | Actual Hours: |
|---|---|---|---|
| 07/31/2013 | No | 4.00 | 0.00 |

*7 principals of   happiness*

Total Planned Hours (as of plan export):   4.00

Total Actual Hours (as of plan export):   0.00

*● Technical Support phone support and technical writing job shadowing (Open to shadowing on off/half day*

*Monday- up until 2pm)*

*● Additional up training   Wed/Thur- 2-6pm*

*-will provide name of contact to shadow in their area*

# Applications

| Job Title | Job ID | Location | Status | Date Created | Date Submitted | Select |
|---|---|---|---|---|---|---|
| Financial Analyst 2 | 3689712 | North Carolina | Declined | 12/10/2012 12:24PM | 12/10/2012 12:24PM | |
| Business Applications Spclst 1 | 3691925 | Arizona | Declined | 12/15/2012 3:19PM | 12/15/2012 3:19PM | |
| Technical Service Specialist 2 | 3739568 | California | Declined | 04/28/2013 5:28AM | 04/28/2013 5:29AM | |
| Technical Writer 2 | 3740309 | Arizona | Declined | 04/28/2013 5:37AM | 04/28/2013 5:37AM | |
| Financial Crimes Analyst 1 | 3744336 | North Carolina | Declined | 05/07/2013 3:08PM | 05/07/2013 3:08PM | |
| Quality Monitor 1 | 3751270 | North Carolina | Declined | 05/28/2013 7:10AM | 05/28/2013 7:10AM | |
| Systems Support Analyst 1 | 3761012 | North Carolina | Declined | 06/21/2013 10:15AM | 06/21/2013 10:15AM | |
| Customer Service Rep 5 | 3765540 | North Carolina | Declined | 07/05/2013 3:04PM | 07/05/2013 3:04PM | |
| Paralegal 1 | 3772059 | North Carolina | Declined | 07/23/2013 9:24AM | 07/23/2013 9:24AM | |
| Call Ctr Planning Specialist | 3782495 | Nevada | Declined | 08/21/2013 6:33AM | 08/21/2013 6:33AM | |
| Hr Customer Service Rep 3 | 3782083 | North Carolina | Withdrawn | 08/21/2013 12:53PM | 08/21/2013 12:53PM | |
| Quality Assurance Analyst 2 | 3785912 | Arizona | Declined | 09/03/2013 1:45PM | 09/03/2013 1:46PM | |
| Implementation Cons 2 | 3810041 | California | Declined | 11/13/2013 9:22AM | 11/13/2013 9:22AM | |
| Systems Qa Analyst 2 | 3859149 | Arizona | Declined | 04/10/2014 3:52PM | 04/10/2014 3:56PM | |
| Systems Qa Analyst 2 | 3858757 | Arizona | Declined | 04/10/2014 3:58PM | 04/10/2014 3:58PM | |
| Systems QA Analyst 3 | 5008362 | North Carolina | Submitted | 06/20/2014 3:24PM | 06/20/2014 3:23PM | |

Case 3:17-cv-00196-RJC   Document 1   Filed 04/12/17   Page 29 of 41

Wells Fargo Employee Self Service

| Title | ID | State | Status | Date | Date |
|---|---|---|---|---|---|
| Business Systems Consultant 1 | 5008313 | Pennsylvania | Declined | 06/20/2014 4:40PM | 06/20/2014 4:40PM |
| Legal Process Specialist 1 | 5013924 | North Carolina | Declined | 07/03/2014 8:21AM | 07/03/2014 8:41AM |
| Research/Remediation Analyst 1 | 5019928 | North Carolina | Declined | 07/26/2014 9:18AM | 07/26/2014 9:18AM |
| Paralegal 1 | 5023392 | Iowa | Declined | 08/02/2014 2:39PM | 08/02/2014 2:37PM |
| Complaint Resln/Reg Conslnt 2 | 5026554 | North Carolina | Declined | 08/22/2014 11:23AM | 08/22/2014 11:23AM |
| Paralegal 1 - Consumer Litigation Paralegal | 5034657 | North Carolina | Declined | 09/05/2014 11:35AM | 09/05/2014 11:35AM |
| Systems QA Analyst 1 | 5043860 | Missouri | Submitted | 10/01/2014 7:28AM | 10/01/2014 7:28AM |

# Exhibit G: Falsification

This is what my Employment Record shows for 2012.



Below is what I access on as an employee within a system called REX. This was the only record I had until HR sent me a copy of my Official Personnel File (which is the screenshot above). The entry above is the same as the one I was provided in 2012. Below is where Susan Lybrand went back into the system while I was on FMLA and downgraded my performance for 2012.

Below is what I access on as an employee within a system called REX.  Below is where Susan Lybrand went back into the system while I was on FMLA and downgraded my performance for 2012.  My score was lowered from 3.45 out of 5 to 2.95 out of 5.



# EXhibit G: Falsification



Below are the entries that show when the original that is in my Employment Record was submitted by me on 01/17/2013. It then shows where Susan Lybrand went back in on 02/15/2013 and altered my scores to the lower scores that can be found in a system called REX. This is another attempt at Tortious Interference with Contract since a score of three or better is needed to seriously be considered to post to a new position.



**Exhibit H: Religious Accomodation: Lent**

Sent from AT&T's Wireless network using Mobile Email

-----Original Message-----
From: Ms F. Underdue [mailto:msfunderdue@yahoo.com]
Sent: Thursday, February 23, 2012 9:43 AM
To: Lybrand, Susan E
Subject: Verification of schedule request

Hello, I would like to know if you be angry if I submitted a request with a specific timeframe so that I can plan out activities that I can attend during Lent. I would like to clarify the timeframe of Lent; 2/22/2012 through 4/8/2012 (week ending 4/14/2012).

----------
**susan.lybrand@wellsfargo.com**
To
msfunderdue@yahoo.com
02/23/12 at 9:49 AM
Good morning Felicia!

I would not be angry at all as a matter of fact, I don't know how soon your request will be processed so it may very well run into the beginning of April before your 30 day schedule change would end.  Allow me the opportunity to follow up today with Daily Ops to see how soon they will have your schedule change in eSP.

Thank you.....sl

# Exhibit I: Corp Security Suarez

**Felicia.Underdue@wellsfargo.com**
To
Walter.Suarez@wellsfargo.com
10/15/14 at 9:40 AM

Hello again,

I am hoping to give you a full understanding regarding the degree to which Susan Lybrand has been bullying me.

The dates on my Employment Record correspond to one of the worst bullying events that had occurred between Susan and I.

I had another run in with Susan on 01/17/2013 which is the same date she updated my Employment Record to HR. She was her normal sugar-coated vicious self and when she saw that I was emotionally distraught over a family issue, she asked to speak with me in private. I sat and cried because I knew she only wanted to get an up close look at me suffering.

On this same date, I had an appointment with my psychiatrist and I knew she was not going to send me back to work when she saw the state I was in.

I was out of work from 01/17/2013 through March 2013. Even when I was not even in the building, this woman was bent on doing any damage she could to me. She is and has been the worst kind of bully you could meet. She speaks in a lilting, sweet sugar-coated tone of voice while she cuts you in half.

Upon returning, I reported that she was causing me respiratory distress because she had begun stalking me on the other side of the room on my new team. For a little while she stayed away after I reported the respiratory problems to Brenda Hauk.

But now she is back visiting people all around me and I fear her presence on each day I work when she is here since I do not feel that EMS will be called in sufficient time to assist me with any respiratory incidences that may occur if my coping strategies fail me.

I have regularly visited my asthma and allergy doctor since my emergency visit in 2013 following the worse respiratory incident I had ever experienced in my life during which Kendra Brown failed to contact EMS. My doctor has been treating me for the respiratory problems I had begun experiencing when Susan began stalking me on my new team. I continue to work with my therapist on coping strategies for working in a hostile work environment through present.

Sincerely,

Felicia A. Underdue

Email CSR
Executive Services & Communications – Email

Wells Fargo Customer Connection I 1525 W. WT Harris Blvd, 3rd Floor I Charlotte, NC 28262
MAC: D1110-033
Tel 1-877-929-5210 Ext. 1335225941

# Exhibit J: Stumpf Please Transfer Me page 1

Felicia.Underdue@wellsfargo.com
To
msfunderdue@yahoo.com
10/23/14 at 8:47 AM

From: Underdue, FELICIA A
Sent: Friday, August 29, 2014 10:33 AM
To: Stumpf, John; Tolstedt, Carrie L.; Smith, James P. (WFVC); Mullican, Kari; Whicker, Jeremy
Subject: Please assist me in being moved from my department.

Good Morning My Esteemed Members of Leadership,

My name is Felicia Ann Underdue. I filed a civil discrimination complaint with the Federal District Courthouse here in Charlotte, NC; 3:14cv183.

This complaint is moving on to the Court of Appeals of the 4th District. I wanted to respectfully request that I be moved to another vacant position that removes me from the current hostile work environment I have reported.

The purpose of this message is not to disrepect anyone and/or to supercede any person in my chain of command.

Following the last reported incidence within my department where my peers were used as nails by my leaders to crucify me for comments I had made in a previous meeting, I have become a Stepford Wife by day and a catatonic paralyzed person in the evenings during my quiet time at home.

I submit this request to all of you to ensure that I have satisfied the question of whether I sought every possible resolution for the complaints I have will be filing with the Court of Appeals.

I respectfully request that I be moved from my current department to a similar position or something that matches my skill sets.

Counsels for Wells Fargo have been Keith Weddington and Shalanna Pirtle of Parker & Poe.

"Keith Weddington
Three Wells Fargo Center | 401 South Tryon Street | Suite 3000 | Charlotte, NC 28202
Phone: 704.335.9035 | Fax: 704.335.9697 | www.parkerpoe.com<http://www.parkerpoe.com/> | vcard | map"

I beg that one of you understand that I am a dedicated employee and the offer to terminate my employment was unfairly suggested by Counsel for Wells Fargo.

My request to be removed from this department have been ignored. So I now turn to you all for relief.

Sincerely,

Felicia A. Underdue
Email CSR
Executive Services & Communications – Email

**Exhibit J:**

Wells Fargo Customer Connection  l  1525 W. WT Harris Blvd, 3rd Floor  l  Charlotte, NC 28262
MAC: D1110-033
Tel 1-877-929-5210 Ext. 1335225941

**Exhibit K: Mediation 1**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Charlotte District Office**

129 West Trade Street, Suite 400
Charlotte, NC 28202
(704) 344-6682
TTY (704) 344-6684
FAX (704) 344-6734 & 6731

Jeffrey M. Ireland, Mediator
Alternative Dispute Resolution
Direct Dial (704) 954-6461
FAX (704) 954-6411
jeffrey.ireland@eeoc.gov

December 10, 2014

Ms. Felicia Underdue                                  **CHARGING PARTY**
3944 Town Center Rd.
Harrisburg, NC  28075

Wells Fargo Bank                                       **RESPONDENT**
c/o s. Lisa Crawford
301 South College, 31st Floor
Charlotte, NC  28202

       Felicia Underdue v. Wells Fargo Bank
       Charge No.:    430-2015-00219

Dear Ms. Underdue & Ms. Crawford:

I am scheduled to mediate the above-referenced charge on **December 22, 2014, at 10:00 a.m.**
Additional details regarding the time and place are listed in the enclosed Mediation Confirmation
form.  Please complete and return or fax only the second page of the form as soon as possible
after your receipt of this letter.

Also enclosed for your review are a mediation agreement, a confidentiality agreement and a
mediation fact sheet.  You do **not** have to sign or return these documents at this time, since you
will be expected to sign both the mediation agreement and the confidentiality agreement at the
beginning of the mediation conference.

**Please note that a person(s) with the <u>AUTHORITY TO RESOLVE THE CHARGE MUST
ATTEND</u> the mediation conference.**

If you have any questions regarding the process, feel free to contact me at (704) 954-6461.  Thank
you for participating in our mediation program.

                Very truly yours,

                Jeffrey M. Ireland
                ADR Mediator

Enclosures

Ms F. Underdue <msfunderdue@yahoo.com>
To
JIMMY JONES
CC
jenny.yang@eeoc.gov chai.feldblum@eeoc.gov charlotte.burrows@eeoc.gov constance.barker@eeoc.gov
victoria.lipnic@eeoc.govFelicia Underdue
04/25/15 at 9:50 AM
Good Morning,


I have no counter offer.  Please feel free to reassign.


Thank you again.

Sincerely,


Felicia Underdue


Mobile 704-488-8189 (primary contact)
"We must not, in trying to think about how we can make a
big difference, ignore the small daily differences we can make."
Edelman, Marion Wright



Hide original message
On Saturday, April 25, 2015 9:41 AM, JIMMY JONES <JIMMY.JONES@EEOC.GOV> wrote:


If you do not express a counter offer, I must reassign your charge to
enforcement for investigation.

Sincerely,

Jimmy Jones
ADR Coordinator
EEOC Charlotte District Office

>>> "Ms F. Underdue" <msfunderdue@yahoo.com> 04/25/15 9:22 AM >>>
Good Morning,
I am declining the offer of $1X,XXX.00 by Wells Fargo, et al.  If
necessary, I will wait for a jury of my peers weigh in on these matters,
if necessary.  I look forward to the investigation.
As my former employer has advised (reference termination letter info
attached), there should be an extensive record of my contacts to Human
Resources which should confirm the repeated abuse and retaliation I
endured following the filing of my case with the US District Court and
the 4th Circuit Court of Appeals.
I sincerely appreciate your candor.  While as a mediator, I understand

Exhibit L.

Page 2

you personally could not fight for me.

Side note about being in school for Paralegal Certification:

The arms and might of Parker & Poe are extensive. Imagine the stone... better yet... the mountain that I felt landed on me when one of my homework assignments led me to find out that the President of the North Carolina Bar Association was a tenured Parker & Poe attorney. Even outside of Wells Fargo, I may be salmon swimming up stream.

After learning from your analogies and examples, I felt you could probably relate to this information. As you mentioned, I am David facing Goliath.

At this point, all I have are prayers for justice. I pray I will receive an investigator that fights for justice.

Again, thank you. Sincerely,

Felicia Underdue

Mobile 704-488-8189 (primary contact)
"We must not, in trying to think about how we can make a big difference, ignore the small daily differences we can make."
Edelman, Marion Wright

Exhibit M: @ Performance 2014 – Eligible for New Positions



## Service Banker Scorecard

**Banker Name:** UNDERDUE, FELICIA
**Primary Queue:** Email OCS
**Backup Queue:**
**Review Type:** SIM
**Review Due:** Mar 2015

**Employee# :** 1056318
**Month1 on floor – Primary Queue:** 01/01/2012
**Month1 on floor – Backup Queue:** 02/01/2012
**Uses Data From:** Jan-2014

**Position:** Service Banker
**Uses Data To:** Dec-2014

| Period | Primary Queue Ramp-up | Backup Queue Ramp-up | Reason For No Level Assigned | Centralized QA - Total Adjusted | Centralized QA - Total Adjusted-Level | Customer Experience - KDM | Customer Experience - KDM-Level | Adherence | Adherence-Level | Factored Emails Per Hour | Factored Emails Per Hour-Level | First Contact Resolution (FCR) | First Contact Resolution (FCR)-Level | Professional Attributes-Level | Overall MPP Level |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MPP Weighting | | | | 15.00% | 15.00% | 35.00% | 35.00% | 5.00% | 5.00% | 30.00% | 30.00% | 10.00% | 10.00% | 5.00% | |
| Jan14 | Normal | | | 98.33% | 5.00 | 66.7% | 3.00 | 96.39% | 5.00 | 6.70 | 2.00 | 100.0% | 5.00 | 3.00 | 3.38 |
| Feb14 | Normal | | | 100.00% | 5.00 | 66.7% | 3.00 | 97.01% | 5.00 | 6.86 | 2.00 | 100.0% | 5.00 | 3.00 | 3.20 |
| Mar14 | Normal | | | 100.00% | 5.00 | 100.0% | 5.00 | 95.61% | 5.00 | 6.28 | 2.00 | 33.3% | 1.00 | 3.00 | 3.65 |
| Apr14 | Normal | | | 93.33% | 4.00 | 100.0% | 5.00 | 98.99% | 5.00 | 7.30 | 3.00 | 100.0% | 5.00 | 3.00 | 4.15 |
| May14 | Normal | | | 96.67% | 5.00 | 33.3% | 1.00 | 96.21% | 5.00 | 6.82 | 2.00 | 50.0% | 3.00 | 3.00 | 2.48 |
| Jun14 | Normal | | | 93.33% | 4.00 | 100.0% | 5.00 | 96.89% | 5.00 | 6.44 | 2.00 | 100.0% | 5.00 | 3.00 | 3.85 |
| Jul14 | Normal | | | 100.00% | 5.00 | 100.0% | 5.00 | 98.84% | 5.00 | 7.92 | 3.00 | 100.0% | 5.00 | 4.00 | 4.30 |
| Aug14 | Normal | | | 96.67% | 5.00 | 0.0% | 1.00 | 97.76% | 5.00 | 7.01 | 3.00 | 100.0% | 5.00 | 3.00 | 2.30 |
| Q1/2014 | No Ramp Up | | | 99.44% | 5.00 | 76.5% | 3.00 | 96.34% | 5.00 | 6.65 | 2.00 | 60.0% | 3.00 | 3.00 | 3.15 |
| Q2/2014 | No Ramp Up | | | 94.44% | 4.00 | 77.8% | 3.00 | 97.40% | 5.00 | 6.90 | 2.00 | 83.3% | 5.00 | 3.25 | 3.51 |
| QTR3/2014 | No Ramp Up | | | 98.33% | 5.00 | 66.7% | 3.00 | 98.34% | 5.00 | 7.50 | 3.00 | 66.7% | 4.00 | 3.50 | 3.51 |
| YTD/2014 | No Ramp Up | | | 97.29% | 5.00 | 74.6% | 3.00 | 97.29% | 5.00 | 6.98 | 2.00 | 83.3% | 5.00 | 3.63 | 3.33 |